C. HEINZ, G. Hinterreger & Sons, Fa. Hofman & Maculan

v.

The UNITED STATES.

No. 557-57.

United States Court of Claims.

Feb. 6, 1963.

———◆———

Gilbert A. Cuneo, Washington, D. C., for plaintiffs. David N. Barus, Washington, D. C., D. Erich Jung, Salzburg, Austria, Arthur B. Carton, Washington, D. C., and Clarence B. Maguire, New York City, on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was Acting Asst. Atty. Gen. Joseph D. Guilfoyle, for defendant.

LARAMORE, Judge.

Plaintiffs, three Austrian contractors, who had contracts for the construction of certain buildings at Camp Roeder, Salzburg, Austria, sue to recover damages for alleged breach of contract by defendant. Substantially the same facts and issues are involved in each contract.

Many questions are presented by both plaintiffs and defendant. However, in our opinion, the basic and primary question as to whether the Government agreed to something and failed to carry out said agreement, is entirely dispositive of this case.

The facts are these: Plaintiffs, herein referred to as Heinz, Hinterreger and Hofman, are construction firms in Salzburg, Austria.

In the Spring of 1951, the U.S. Forces, Austria, had received a directive to construct a 10,000-man camp at Salzburg. Bids were received, disclosing that the lowest bids were by German firms. It then became apparent that the German firms could not do work in Austria without special licenses. The low Austrian bidders were Heinz and Hinterreger.

It was the opinion of the Army that all bids received were too high and negotiations were undertaken to attempt to secure reductions to bring them more in line with the German bids.

As a result of the negotiations Heinz was awarded the contract for the construction of one group of five barracks.

During the course of negotiations Heinz asked for certain concessions. One was that it be paid for materials as they were delivered to the job site. Another was that it be allowed to submit invoices every two weeks rather than at monthly intervals as specified in the contract. When, in connection with the latter request, they asked how long payment would take, they were advised, that this was not within the control of the engineers, but it was the opinion of the representatives present that it would not take more than 14 days after a correct invoice was received. The concern of plaintiffs over prompt payment reflected an endemic capital scarcity in Austria at the time and consequent high bank rates on borrowed money.

Heinz agreed to a reduction in the bid price of 5.505 percent, and the agreement was recognized by an exchange of letters. Heinz wrote the engineers confirming its understandings. The letter, in pertinent part, is as follows:

"2) Payment for construction work according to biweekly presentation of bill based upon achieved work, whereat up to completion of 50% of the total building extent 10% of individual partial bills will be kept back. After attainment of more than 50% of total contractual volume the biweekly partial bills will be reimbursed in full value.

"3) In addition to the biweekly submitted partial bills for performed building work, building material stockpiled in advance on the building site will be shown separately in bill and this reimbursed

simultaneously with the bi-weekly partial bills.

"4) Payment for final invoice takes place immediately after completion of buildings without guarantee—deposit, in within not more than 2 weeks after submitting of bill.

"5) At observation of conditions for payment shown in Paras 1–4 by you, we will grant a reduction of 5½% of the respective partial bill based upon the unit prices of our bid." [1]

Under date of June 11, 1951, the contracting officer, who had not been present at the prior conferences, wrote to Heinz. His letter, in material part, reads as follows:

"In reply to your letter of 8 June 1951 * * * and in confirmation of certain statements made by my representative, * * * to your group, the Contracting Officer hereby informs you that in accordance with the terms of the contract form * * *, the following terms will govern the administration of your proposed contract for the construction of five buildings in the Siezenheim Area:

"1. Your invoices for the estimated work accomplished to include building materials on the site may be submitted every two weeks and will be paid as soon as practicable thereafter (a period which it is anticipated will not normally exceed two weeks), except that 10% of the amount payable on each occasion will be withheld until final completion and acceptance of all work under the contract.

"2. While the Contracting Officer may waive the further application of the 10% withholding upon successful completion of 50% of the work to be done under the contract, your attention is invited to the fact that as

a condition precedent to such waiver you must have shown evidence of satisfactory progress in the work.

"3. Specific attention is invited to the fact that upon payment for building materials on the work site, title thereto rests with the US Government and said materials must be held free therefore from possible claims or actions on the part of third parties, and may not be obligated by lien, mortgage, loan or other encumbrance. By title resting in the US Government, you are not thereby relieved from your responsibility under the contract for proper protection and use of the said materials. Further, where payment is made separately, if so made, for building materials on the work site, such payment must quite obviously be subsequently absorbed into the payments for work in place.

\*   \*   \*   \*   \*   \*

"5. In consideration of the above you therefore agree to reduce the sum of your bid by 5.505%, said reduction to be applicable to the work in place portion of each partial invoice and in the final invoice covering the work as a whole."

At the request of Heinz, there was inserted in the contract, only on the copy given Heinz, the words "My letter from [sic] 11 June 1951 applies to this contract."

In about July of 1951, the Army was ready to continue with the construction of Camp Roeder, and again bids were solicited. The situation relative to the bids was practically the same as in the Heinz bid and contract. Eventually an agreement was reached between the defendant and Hinterreger and Hofman, respectively, whereby a 19 percent price reduction was given in exchange for certain concessions. The only concession here involved was that Hinterreger and Hofman be permitted to submit invoices every two weeks rather than at monthly intervals as had been allowed in connec-

---

1. Copied from English translation with correction of obvious errors.

tion with the earlier contract. They were told that this would be permitted, but were given no assurance as to how much time would be required to effect payment of such invoices. It appears that of the 19 percent price reduction respecting both Hinterreger and Hofman, only 5 percent was granted in consideration of the change in the early submission of invoices provision. The balance of the discount was granted for considerations not material herein.

Under date of August 11, 1951, the contracting officer addressed a letter to Hofman. This letter is identical to that of September 7 to Hinterreger which reads, in material part as follows:

"With reference to our negotiations of 11 August 1951 * * * and in confirmation of certain statements made by my representative * * * to your firm, the Contracting Officer hereby informs you that in accordance with the terms of the contract form * * *, the following terms will govern the administration of your proposed contract for the construction of fifteen buildings at Camp Roeder, Siezenheim.

"1. Your invoice for the estimated work accomplished may be submitted every two weeks and will be paid as soon as practicable thereafter, except that 10% of the amount payable on each occasion will be withheld until final completion and acceptance of all work under the contract. Payments of these bills may be made in Deutsch Marks up to 50% of the contract price, the remaining 50% may be paid in A. Schillings. Legal US conversion rates will apply.

"2. While the Contracting Officer may waive the further application of the 10% withholding upon completion of 50% of the work be done under the Contract, your attention is invited to the fact that as a condition precedent to such waiver you must have shown evidence of satisfactory progress of the work.

    *     *     *     *     *     *

"5. In consideration of the above you therefore agree to reduce the sum of your bid by 19%, said reduction to be applicable to the work in place portion of each partial invoice and in the final invoice covering the work as a whole."

Hofman, by its authorized representative, replied as follows:

"The construction group Hofman & Maculan represented by Dipl. Ing Sponer hereby agrees to reduce our corrected bid price A.S. 11,727,234— for the construction of 5 barracks by 19%.

"It is understood that we will be allowed to submit bills for payment of work in place bimonthly. It is further understood that payment is to be 50% maximum deutsch mark and 50% schillings.

"Individual bills will be submitted either in D-marks or schillings. Legal US conversion rates will apply."

As in the Hinterreger case, Hofman claims that only five percent of the price reduction granted was in consideration of the change in the contract provision relating to payment. These letter requests and answers by defendant were, as in the case of Heinz, attached to the Hofman contract.

Plaintiffs thereupon embarked upon the performance of their respective contracts and submitted invoices. For various reasons, few, if any, of the vouchers were paid within two weeks of their original submission. This stemmed from a combination of factors, which are particularly set forth in finding 10. In general, the payment date took more than two weeks because of necessary checking of measurements; lack of centralized control by plaintiffs in the manner of preparing schedules; errors in schedules; checking quantities of work done and materials on hand; substantial variations in final claimed quantities and ensuing negotiations; erroneous delivery of documents; late deliveries of documents; errors in calculations; preparation of new and corrected documents after

changes were made, etc. No priority was given the plaintiffs in the processing of their bills for payment over other contractors performing contracts at Camp Roeder. Defendant's officer who supervised the processing of invoices for payment was not aware that plaintiffs' bills were to be expedited because of a discount for prompt payment feature, and did not know the reasons for the discounts from plaintiffs' bid prices.

The plaintiffs each demanded payment from defendant of amounts representing the reduction in bid prices resulting from said discounts. Defendant, acting through the contracting officer, denied plaintiffs' demands. Plaintiffs each appealed to the Board of Contract Appeals. Said Board rendered decisions denying each claim, which decisions were subsequently approved by the Commanding General, U.S. Forces in Austria.

Plaintiffs Heinz and Hofman could not appeal the decisions to the Armed Services Board of Contract Appeals, Washington, D.C., under the "Disputes" clause of their respective contracts, because the amount involved was under $50,000. Plaintiff Hinterreger did, however, appeal and said appeal was dismissed insofar as it related to this claim.

Plaintiffs, through their attorney, filed requests in writing with the Comptroller General of the United States for his consideration and determination of the claims. The Comptroller General advised that there was no basis for plaintiffs' claims.

Further facts are found relating to the lack of arbitrary and capricious action pertaining to any of the foregoing decisions. Additional facts are found relating to a release executed by Heinz. For reasons which will become apparent, we are not called upon to relate or discuss these findings.

It is plaintiffs' position that in the light of the contract price reductions, the defendant had the obligation not only to permit filing of invoices every two weeks, but to give these invoices special treatment in processing so that each of defendant's payments thereon to the plaintiff contractor would be made more promptly than ordinarily.

It is defendant's position that there was no obligation on the United States to pay plaintiffs' invoices within any particular period of time and that in any event all of plaintiffs' vouchers were paid as soon as practicable after their submission.[2]

Respecting the Heinz contract, the result of the negotiations and the concessions granted him were quite simple. Heinz was given a right to submit invoices every two weeks rather than at monthly intervals and was to be paid for materials delivered to the job site. Beyond question, Heinz submitted invoices every two weeks and beyond question Heinz was paid for materials delivered to the job site.

■ In connection with the payment provision, it is clear that in answer to Heinz's question regarding time, no one present on behalf of the United States knew or was in a position to make a promise as to how long it would take to make payment.[3] True, an opinion was given, but was it a representation binding upon the United States? We think not. So many factors entered into such a situation that it would be practically impossible for any person to accurately foresee how much time would be consumed in the processing thereof. As a matter of fact, in this case the facts as outlined above pertaining to all three contracts show that there were many factors which necessarily must have caused certain delays in payment. What more must the de-

2. Except for the payment for materials delivered to the job site, the facts and issues are substantially the same in all three contracts. Consequently, what we say regarding the Heinz contract will be equally applicable to the other two contracts.

3. The correspondence referred to in the summary of facts reveals that Hinterreger and Hofman could submit invoices every two weeks and " * * * will be paid as soon as practicable thereafter * * *."

fendant do in circumstances such as this when payment is promised as soon as practicable?

Plaintiffs each say that the defendant promised special treatment and priorities regarding payment, and it is a fact that no priority was given the plaintiffs in the processing of their bills for payment over other contractors performing contracts at Camp Roeder. However, as we read the agreements, no priority in payment was promised. The defendant in each instance in effect merely promised to do its best. In fact, plaintiffs each did receive a substantial benefit resulting from the contract price reduction. Each contractor did file invoices every two weeks and the defendant engineers actually were able to begin processing them much earlier than possible under a standard form contract where invoices are submitted monthly. We know that this processing is, under any circumstances, time consuming and certainly plaintiffs enjoyed an appreciable gain in this time element. What happened at the payment level is of no concern here. However, the evidence shows that very little, if any, delay was experienced from the date the bills were sent to the finance office and the date of payment. If there was delay in the processing of the claims before they were received in the finance office, the facts conclusively show that all delays were the fault of the respective contractors.

In summary, the maximum obligation of the Government was to permit early submission of invoices and pay for materials on the job site and in respect to each make payment as soon as practicable thereafter. We think the Government fully lived up to its agreement and plaintiffs each received what it bargained for.

For the above stated reasons it is unnecessary to discuss other issues presented by defendant.

Plaintiffs' petition will be dismissed.

JONES, Chief Judge, REED, Justice (Ret.), sitting by designation, and DAVIS and DURFEE, Judges, concur.